**SO ORDERED.**

**SIGNED August 5, 2016.**



_____
JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE
_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

IN RE: CLYDE WILSON, JR.                        CASE NO.: 11-81519
        DEBTOR                                    CHAPTER 13

### REASONS FOR DECISION

The debtor in this Chapter 13 case, Clyde Wilson, acquired a post-confirmation cause of action as the result of an auto accident. A settlement of this claim has been reached that will net Wilson $74,067.52. There are two proposals before the court for the disposition of a portion of these funds. The first, proposed by Wilson in an Application to Ratify Compromise, Ratify Attorney Fees and Prepay Base, calls for $2,631.14 to be used to pay the remaining balance due under his existing confirmed plan. Under this proposal, Wilson will exit his bankruptcy case with not only a discharge, but also with $71,436.38 and prepetition creditors being paid zero. Wilson contends that prepayment is appropriate in this case because the liquidation analysis provided by 11 U.S.C. §1325(a)(4) (also known as the "best interests of the creditors test") was satisfied at the time his plan was originally confirmed, such that the unsecured creditors will receive an amount

at least equal to what they would have received if the case had originally been filed as under Chapter 7. Wilson also claims he needs all of the settlement proceeds remaining after he pays off his plan for his maintenance and support.

The second proposal, which is advocated by the Chapter 13 Trustee in a Motion to Modify the plan, requires Wilson to pledge $11,744.54 of the settlement proceeds to pay the remaining balance of his plan payments, and increase the dividend to the unsecured class to pay 100% of all allowed unsecured claims. Under this proposal, Wilson will exit his bankruptcy case with a discharge, $62,322.98, and with his allowed unsecured creditors being paid in full. The Trustee's argues that the post-confirmation cause of action is property of the Chapter 13 estate, and the best interests of the creditors test must be redetermined as of the date of the Trustee's proposed modified plan.

The hearing on these competing proposals was held on May 5, 2016. Following the hearing, and for the reasons stated on the record, the Court indicated it was inclined to grant the Trustee's Motion and deny Wilson's Application to the extent it sought to prepay his plan. However, the hearing on these matters was continued to May 19, 2016 to allow Wilson to present evidence supporting his contention that he needed the entirety of the settlement proceeds for his maintenance and support. At the request of the parties, the hearing was again continued to June 2, 2016. At the June 2 hearing, the parties notified the court that there would be no additional evidence on the maintenance and support question, and submitted that the case was ripe for decision by the court.

## Background

Wilson filed for relief under Chapter 13 of the Bankruptcy Code on November 4, 2011. His plan was confirmed on March 20, 2012; it required Wilson to make three monthly payments

2

of $225, and 57 payments of $270, resulting in a plan base of $16,065. The plan provides that unsecured creditors will receive a minimum of 0% of their claims. At the time of confirmation, the liquidation test of §1325(a)(4) was satisfied because the bankruptcy estate did not have any non-exempt property that could be liquidated. As a result, the amount that would be paid to the unsecured creditors under the plan was not less than the amount that would be paid if the estate was liquidated.

Three years later, on or about July 25, 2015, Wilson was involved in a car accident. On August 25, 2015 he amended Schedule B to disclose the potential cause of action stemming from the accident. On November 2, 2015, he filed an application to appoint special counsel, Joseph Beck and the firm of Hunter & Beck, to represent him in that litigation; the application was approved by the court on December 3, 2015. Special counsel negotiated a settlement of the cause of action. The total settlement amount is $196,845, and after payment of all fees and expenses, Wilson will receive $74,067.52.

The total amount of the settlement, and the deductions for fees and other costs from that total, are not disputed, and are therefore approved. Wilson's request to use $2,631.14 of the settlement proceeds to prepay his confirmed plan, and the trustee's competing motion to modify to require that $11,744.52 of the settlement proceeds be set aside to pay all allowed unsecured claims in full, are the remaining points of contention.

### Law and Analysis

*Determining Property of the Chapter 13 Estate after Confirmation*

This analysis begins with a determination of whether the proceeds of Wilson's post-confirmation cause of action are property of the bankruptcy estate. "This determination is especially important as 'a bankruptcy court has no jurisdiction to entertain a motion by a trustee

3

or creditor under §1329 seeking to take property acquired by a debtor after confirmation unless the court concludes the property is property of the bankruptcy estate rather than the debtor.'" *In re Wetzel*, 381 B.R. 247, 252 (Bankr. E.D. Wis. 2008), *quoting In re Forte*, 341 B.R. 859, 865 (Bankr. N.D.Ill. 2005). But, identifying property comprising a Chapter 13 bankruptcy estate after plan confirmation is not uncomplicated, where, as in this case, property of the estate vests in the debtor at confirmation.

The complications are best illustrated by the code provisions themselves. Three sections of the Bankruptcy Code must be consulted to determine whether property acquired by a debtor post-confirmation is property of the estate: §§ 541, 1306 and 1327. Section 541 defines property of the estate as of the commencement of a bankruptcy case, and it includes, among other items, "all legal or equitable interests of the debtor in property." 11 U.S.C. §541(a)(1). It is well settled that "'all legal or equitable interests of the debtor in property' includes causes of action belonging to the debtor at the time the case is commenced." *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 245 (5th Cir.1988) (citations omitted). In Chapter 13 cases, "property of the estate" includes not only §541 property as of the commencement of the case, but also "all property of the kind specified in [§541] that the debtor acquires after commencement of the case but before the case is closed, dismissed or converted ... whichever occurs first." 11 U.S.C. §1306(a)(1). Under this expanded definition, a cause of action acquired by a debtor after the case was filed, but before closure, dismissal or conversion, is property of the estate and thus may be subject to administration by the court in accordance with the Bankruptcy Code.

It is not until §1327 is thrown into the mix that the complications become evident. This provision provides, in part: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of the plan vests all of the property of the estate in the debtor . . . free and

clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. §1327(b) and

(c). Section 1327 is "facially inconsistent" with §1306. *Woodard v. Taco Bueno Restaurants, Inc.,* 2006 WL 3542693, at \*4 (N.D. Tex. 2006). While §1306 continues the existence of the

Chapter 13 estate until the first to occur of closure, dismissal or conversion of the case, §1327

vests, i.e., transfers, estate property to the debtor upon confirmation of the plan. Thus, the

conundrum faced here: How can property acquired post-confirmation be property of the estate if

all property of the estate is vested in the debtor at confirmation? "Even the most versed in

bankruptcy law are unclear on this issue." *Woodard,* at \*11.

The United States Court of Appels for the Fifth Circuit has not rendered an opinion

concerning the interplay between §§ 1306 and 1327 of the Code.  However, in *In re Flugence*, 738

F.3d 126 (5th Cir. 2013), the Court, in holding that a Chapter 13 debtor was judicially estopped

from pursuing a post-confirmation cause of action due to non-disclosure to the bankruptcy court,

acknowledged that there may be uncertainty as to whether a particular asset may be available to

creditors of a Chapter 13 estate as a result of the "conflict" between §§ 1306 and 1327.  The Court

nonetheless acknowledged the debtor's ongoing duty to disclose, stating:

> Even so, our decisions have settled that debtors have a duty to disclose to the bankruptcy court notwithstanding uncertainty. The reason for the rule is obvious: Whether a particular asset  should  be  available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets — even where he has a colorable theory for why those assets should be shielded from creditors — allows the issue to be decided as part of the orderly bankruptcy process.

*Flugence*, 738 F.3d at 130.[1]

Therefore, the first step in the "orderly bankruptcy process" referenced in *Flugence* is for

this Court to examine and resolve, within the context of Chapter 13 of the Bankruptcy Code, the

---

[1] Disclosure is not an issue in Wilson's case.  He disclosed the potential cause of action within 30 days of the accident by amending his schedules.

inherent conflict created by the interplay between §1306 and §1327. This Court is not the first to wrestle with this issue. Numerous courts have faced facts similar to those presented in this case and concluded that a Chapter 13 estate may include gifts, inheritances and causes of action which are acquired by a debtor post-confirmation. *See In re Waldron,* 536 F.3d 1239 (11th Cir. 2008) (post-confirmation cause of action); *Gilbreath v. Averitt Express, Inc.,* 2010 WL 4554090 (W.D. La. 2010) (post-confirmation cause of action); *Woodard v. Taco Bueno Restaurants, Inc.,* 2006 WL 3542693, at *10 and *11 (N.D. Tex. 2006) (post-confirmation cause of action); *In re Bratcher,* 2013 WL 5309549 (Bankr. S.D. Tex. 2013) (post-confirmation cause of action); *In re Crouser,* 476 B.R. 340 (Bankr. S.D. Ga. 2012), *aff'd,* 2014 WL 2444399 (11th Cir. 2014) (damages for stay violation); *In re Moran,* 2012 WL 4464492 (Bankr. N.D. Tex. 2012) (post-confirmation inheritance); *In re Powers,* 435 B.R. 385 (Bankr. N.D. Tex. 2010) (post-confirmation cause of action); *In re Wetzel,* 381 B.R. 247 (Bankr. E.D. Wis. 2008) (post-confirmation inheritance and business interest); *In re Harvey,* 356 B.R. 557 (Bankr. S.D. Ga. 2006) (post-confirmation cause of action); and *In re Nott,* 269 B.R. 250 (Bankr. M.D. Fla. 2000) (post-confirmation inheritance). Other courts have found otherwise. *In re LaTorre,* 2012 WL 1565242 (Bankr. D.N.J. 2012) (post-confirmation cause of action); *In re Foreman,* 378 B.R. 717 (Bankr. S.D. Ga. 2007) (post-confirmation cause of action).

A review of these cases shows that there are no less than five separate approaches being employed by courts to answer the question of whether property acquired by a Chapter 13 debtor after confirmation constitutes property of the estate. These approaches have been succinctly summarized as follows:

> Estate-termination approach — At confirmation, the estate ceases to exist and all property of the estate, whether acquired before or after confirmation, becomes property of the debtor.

6

Estate-transformation approach — At confirmation, all property of the estate becomes property of the debtor except property essential to the debtor's performance of the plan; the Chapter 13 estate continues to exist, but it contains only property necessary to performance of the plan, whether acquired before or after confirmation.

Estate-replenishment approach — At confirmation, all property of the estate becomes property of the debtor; the Chapter 13 estate continues to exist and "refills" with property defined in §1306 that is acquired by the debtor after confirmation, without regard to whether that property is necessary to performance of the plan.

Estate-preservation approach — The vesting of property in the debtor under §1327(b) does not remove any property from the Chapter 13 estate, whether acquired before or after confirmation; property remains in the estate until after the case is closed, dismissed, or converted. The debtor's rights and responsibilities with respect to property of the estate may change somewhat at confirmation, but the existence and composition of the estate are not disturbed by §1327(b).

Conditional-vesting approach — At confirmation, vesting gives the debtor an immediate fixed right to use estate property, but that right is not final until the debtor completes the plan and obtains a discharge.

Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Ed., §230.1, ¶230.1[9], Sec. Rev. June 8, 2004, www.Ch13online.com.

Virtually all of the approaches have been criticized. The estate-termination approach has been criticized for rendering §1306 meaningless with regards to property acquired by the debtor after the case is filed but before the case is closed, dismissed or converted. *See In re Rodriquez*, 421 B.R. 356, 375 (Bankr. S.D. Tex. 2009); *see also Woodard*, 2006 WL 3542693, at *5. The estate transformation approach "has been heavily criticized as ignoring the language in Section 1306, which provides that all property acquired before the case is closed, dismissed or converted becomes property of the estate. . . . Courts have also criticized this approach for requiring a 'subjective analysis not contemplated by the code.'" *In re Powers*, 435 B.R. 385, 388 (Bankr. N.D. Tex. 2010), *citing Barbosa v. Solomon*, 235 F.3d 31, 35 (1st Cir. 2000). The estate replenishment approach (sometimes referred to as the "modified termination approach" or the "reconciliation approach") has been criticized as "lacking logical consistency." *See Woodard*,

7

2006 WL 3542693, at *7. The estate preservation approach has been criticized as going "too far by 'lumping together assets that exist at confirmation and those received in the future.' . . . By treating all property as property of the estate until discharge, dismissal or conversion, this approach effectively ignores the language of Section 1327(b) by not vesting property of the estate in the debtor at the time of confirmation." *Powers*, 435 B.R. at 388, *citing Woodard,* at *6. Finally, the conditional vesting approach, which originated in *Woodard*, appears to create levels or stages of vesting, i.e., at the time of confirmation, vesting only includes the right of future enjoyment; full transfer of estate property to the debtor is delayed until all obligations due under the plan are satisfied by the debtor.

Of all these approaches, the estate replenishment approach is the most widely adopted. *See United States v. Harcher*, 371 B.R. 254, 268 (N.D. Ohio 2007) (the reconciliation [replenishment] approach is the "growing majority"). As one court has noted, "when compared to the other approaches that tend to ignore either section 1306 or section 1327, or require the court's subjective treatment of post-confirmation property, [the replenishment] approach is viewed as giving effect to both sections and thereby attempting to harmonize the two provisions." *Powers*, 435 B.R. at 388. The *Powers* court, therefore, adopted the estate-replenishment approach for resolving the conflict between §§ 1306 and 1327.

This Court also adopts the estate-replenishment approach. This approach gives effect to §1306 by recognizing that all property acquired by the debtor after confirmation is property of the estate, while at the same time giving effect to §1327 by recognizing that all property of the estate at the time of confirmation vests in the debtor. Therefore, all post-confirmation assets, including a debtor's personal injury cause of action, are property of the estate which must be scheduled as mandated by *Flugence,* "so that the Trustee's or a creditor's right to seek modification is a

8

meaningful right" under 11 U.S.C. §1329.  *In re Harvey*, 356 B.R. 557, 566 (S.D. Ga. 2007), *aff'd*, *In re Waldron,* 536 F.3d 1239 (11th Cir. 2008).

While this Court adopts the estate-replenishment approach to resolve the conflict between §§ 1306 and 1327, the Court notes that the conditional vesting approach was adopted by the District Court for the Western District of Louisiana in *Gilbreath v. Averitt Express, Inc.,* 2010 WL 4554090 (W.D. La. 2010). While the *Gilbreath* approach and legal reasoning are different from this Court's approach, the result with respect to Wilson's case is the same. The proceeds of his post-confirmation cause of action are property of the estate.

The court must now consider, as part of the orderly bankruptcy process, whether the settlement proceeds should be shared with Wilson's creditors. The answer to this question will depend upon the outcome of the Trustee's Motion to Modify under §1329 of the Code.

*Modification of a Plan after Confirmation*

Section 1329 of the Bankruptcy Code governs modification of a plan after confirmation: "At any time after confirmation but prior to completion of plan payments, the plan may be modified upon the request of the debtor, the trustee, or the holder of an allowed unsecured claim" 11 U.S.C. §1329.  In general, plan modification may be appropriate under three circumstances:  (i) "to increase or reduce the amount of payments," (ii) "to extend or reduce the time for payments," or (iii) "to alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." *Id.*

Section 1329 does not set forth criteria for determining when a motion to modify a confirmed plan is appropriate.  "Some courts require that an unanticipated substantial change must occur before plan modification is permitted." *In re Moran*, 2012 WL 4464492, *2 (Bankr. N.D.

Tex. 2012). However, "the Fifth Circuit has adopted the opposing view that §1329's plain language does not provide for any threshold requirement to modify" a Chapter 13 plan. *Id.*, citing, *In re Meza*, 467 F.3d 874, 877-78 (5th Cir. 2006). But the court in *Meza* also noted that "modification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan." *Id.* Simply put, courts have concluded that a debtor's receipt of an increase in income, or a windfall, often provides a legitimate basis for modification of a Chapter 13 plan. *In re Wetzel,* 381 B.R. at 251; *In re Nott*, 269 B.R. at 252.

The focus now shifts to determining whether the Trustee's proposed modification satisfies §§ 1322(a), 1322(b), 1323(c), and 1325(a), as required under 11 U.S.C. §1329(b)(1). It is undisputed that the Trustee's proposed modification to Wilson's plan satisfies §§ 1322(a), 1322(b) and 1323(c) of the Code. The primary issues here are whether the modification: (i) satisfies the liquidation test of §1325(a)(4), (ii) is proposed in good faith under §1325(a)(3), and (iii) is feasible under §1325(a)(6).

Section 1325(a)(4) provides:

> [T]he value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. §1325(a)(4).

The foregoing test is obviously performed, and must be satisfied, at the time a debtor's plan is initially confirmed. The question here is whether that test must be performed anew, based on the status of the estate at the time of a proposed modification. Wilson contends that the liquidation analysis is only performed at the time of original confirmation, and since it was satisfied at that time, the proceeds of the post-confirmation cause of action can be used to prepay the existing

10

confirmed plan. The Trustee disagrees, asserting that the liquidation test must be redetermined

based on estate property as of the date of the proposed modification.

Courts are split on this issue. The leading case supporting Wilson's position is *Forbes v.

Forbes*, 215 B.R. 183 (8th Cir. BAP 1997). In that case, the debtor proposed a post-confirmation

modification to prepay his plan with a single payment from the settlement of a post-confirmation

lawsuit. An objection was raised that the settlement proceeds were property of the estate that must

be included in the best interests of the creditors test under §1325(a)(4). The Bankruptcy Appellate

Panel for the Eighth Circuit held that the effective date of the plan did not change at modification

after confirmation, and thus the settlement proceeds did not impact the test in §1325(a)(4). This

decision has been criticized by Chapter 13 commentators, Keith M. Lundin & William H. Brown*,*

*Chapter 13 Bankruptcy*, 4th Edition, §254.1, ¶254.1[8], Sec. Rev. June 8, 2004,

www.Ch13online.com:

> The approach in *Forbes* — that the effective date of the modified plan is the same
> as the effective date of the original plan — is arguably at odds with the logic of
> §1329(a), which permits modification after confirmation to reflect changes after the
> effective date of the original plan. The *Forbes* approach is hard to square with the
> "changed circumstances" requirement for post-confirmation modification imposed
> by many courts. Application of the *Forbes* rule produces odd outcomes for other
> tests under §1329(a).

The approach in *Forbes* is now considered the minority view. The majority view is that

the liquidation test must be applied and determined as of the effective date of the plan as modified.

*In re Barbosa*, 236 B.R. 540, 552 (Bankr. D. Mass. 1999), *aff'd on other grounds,* 243 B.R. 562

(D. Mass), *aff'd* 235 F.3d 31 (1st Cir. 2000), is the leading case for the majority:

> [T]he better interpretation is that the "effective date of the plan" is the effective date
> of the plan as modified. This interpretation gives effect to §1329(b)(2) and
> recognizes that the passage of time between confirmation of the original plan and
> confirmation of the modified plan does change the facts and circumstances of a
> Chapter 13 case. Those changes may benefit the debtor or benefit the creditors, but
> the tests for confirmation in §§ 1322 and 1325 that are applied at confirmation of a

11

modified plan under §1329(b)(1) should be applied to the facts as they appear at the time of confirmation of the modified plan.

*Id.* (*citing* Keith M. Lundin, *Chapter 13 Bankruptcy*, §6.44 at 6-133 (2nd ed. 1994 & Supp. 1996)).

Courts following the majority view have also relied upon the legislative history to §1329(b):

In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, "the plan" as used in the section will be the plan as modified under this section, by virtue of the incorporation by reference into this section of proposed 11 U.S.C. 1323(b). Thus, the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan.

H.R. Rep. No. 595, 95th Conf., 1st sess. 431 (1977), U.S. Code Cong. & Admin. News, pp. 5787, 6386, 6387; *see also In re Morgan*, 299 B.R. 118, 124-25 (Bankr. D. Md. 2003); *In re Nott*, 269 B.R. 250, 255 (Bankr. M.D. Fla. 2000); *In re Barbosa*, 236 B.R. at 553, n.22; and *In re Walker*, 153 B.R. 565, 568 (Bankr. D. Or. 1993).

This Court adopts the majority view. Thus, the best interests of the creditors test must be redetermined as of the date of confirmation of the modified plan. Not only does redetermination give full effect to all of the provisions of §1329, it also supplies meaning and purpose to §1306 with regards to property entering the estate after confirmation of the original plan by providing a mechanism for the court to determine whether a debtor should be required to share improvements in his finances with his creditors. "Congress … intended that the debtor repay his creditors to the extent of his capability during the Chapter 13 period. Certainly, Congress did not intend for debtors who experience a substantially improved financial condition after confirmation to avoid paying more to their creditors." *In re Wetzel,* 381 B.R. at 254. As another court surmised, it is "not the design of the Bankruptcy laws to allow the debtor to lead the life of Riley while his creditors suffer on his behalf." *Id., citing In re Bryant*, 47 B.R. 21, 26 (Bankr. W.D.N.C. 1984).

In this case, the Trustee asserts that the only change in Wilson's property since confirmation of his plan is the addition of the personal injury cause of action. There are no allowed

exemptions for these proceeds. Thus, the Trustee contends that in this case the modified plan must pay 100% to unsecured creditors to satisfy the best interests of the creditors test. Since the total allowed claims are $11,359.54, the modified plan requires that this amount be paid into the plan from the settlement proceeds. The court agrees with the Trustee's position and finds that the best interests of the creditors test, as of the date of modification, appears to require that a portion of the proceeds of Wilson's post-confirmation cause of action be used to pay all allowed unsecured creditors.

However, the inquiry does not end here. Before the Trustee's motion to modify can be granted, the court must be satisfied that the proposed modification satisfies the good faith test in §1325(a)(3) and the feasibility test in §1325(a)(6). Modification is not a given, "as the decision whether to grant plan modification is within the discretion of the bankruptcy court, and is subject to the requirements that plan modifications be proposed in good faith." *In re Wetzel,* 381 B.R. at 251. The good faith test under §1325(a)(3) simply requires the court to find that the "plan has been proposed in good faith and not by any means forbidden by law." Generally, a plan that shows an increase in the ability of the debtor to pay, and an "increased payout to unsecured creditors comports with [the] good faith requirement." *In re Wetzel,* 381 B.R. at 254. As to the plan put forth by the Trustee in this case, the court finds it has been proposed in good faith.

It is important to note that Wilson's improved financial condition in this case is the result of his receipt of proceeds from the settlement of a personal injury action. Thus, while the court is concerned with insuring that Wilson is paying all he can to his creditors during the pendency of his Chapter 13 case, the court is equally concerned with Wilson's wellbeing in light of the accident. In other words, the primary concern at this point is not whether the debtor is living an extravagant lifestyle as a result of his newly acquired asset, but whether he may need part or all of the

settlement proceeds for his continuing medical or living expenses. Accordingly, the court must be satisfied that the proposed modified plan is feasible, meaning that the "debtor will be able to make all payments under the plan and comply with the plan." 11 U.S.C. §1325(a)(6). If it is shown that the debtor needs the settlement proceeds to fund medical bills or basic living expenses, then it is possible the court, in its discretion, will not approve the proposed modification on the grounds that the modification is not feasible.

The Trustee contends the plan is feasible because the settlement proceeds to be received by Wilson are not subject to any exemption or any other law which may make the funds unavailable to fund the plan. Wilson, however, asserts, in both his application to prepay, and in his opposition to the Trustee's motion to modify, that all of the funds, with the exception of those to be used to prepay the plan, are necessary for his "maintenance and support." Wilson states in his motion that he is unable to work at this time. He also claims that he applied for disability, but was denied those benefits.

It is these claims by Wilson which led the court, after announcing that the proceeds at issue were property of the estate and may be used to modify the confirmed plan, to continue the hearing so that Wilson could present evidence in support of his assertions. The hearing was initially continued to May 19, 2016. It was continued again to June 2, 2016. At the June 2 hearing, no additional evidence was submitted, and counsel for both parties indicated that the matter was ready for decision. Given the lack of even a shred of evidence to support Wilson's assertion that he was unable to work, and that he needed essentially all of the settlement proceeds to pay ongoing medical expenses, the Court informed the parties on June 2 that the Trustee's motion to modify would be granted, and Wilson's motion to prepay would be denied.

## Conclusion

The Court finds that the Trustee's modified plan, as set forth in the Motion to Modify, is confirmable under 11 U.S.C. §1329(b)(1). The proceeds of Wilson's post-confirmation cause of action are property of the estate and are the proper subject of the Trustee's modified plan. The court also finds that the best interests of the creditors test must be redetermined as of the date of the proposed modification. Applying that test in this case requires that all allowed unsecured claims be paid in full. While the court certainly would have considered evidence supporting Wilson's claim that he needed all of the settlement proceeds for ongoing medical and living expenses, Wilson, after being given an opportunity to do so, presented no evidence to support this contention.

Accordingly, Wilson's Application is granted to the extent it seeks approval of the settlement agreement, the settlement amount and the attorney's fees and other costs to be deducted from the settlement amount; Wilson's Application is denied to the extent it seeks to prepay his confirmed plan. The Trustee's Motion to Modify, which requires that sufficient funds be set aside from the settlement proceeds to pay all allowed unsecured claims in this case, is granted. A separate and conforming order will be entered.

# # #